IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GRACE SMITH, MICHAEL O. SMITH, AND J.A. SMITH (MINOR CHILD), <br> *Plaintiffs*, <br> v. <br> ONSITE NEONATAL PARTNERS, INC., et al., <br> *Defendants*. | CIVIL ACTION NO. 5:22-cv-3789-MMB |

MEMORANDUM OF DECISION

**BAYLSON, J.**                                                                     February 9, 2022

I.      INTRODUCTION

This case is one of several filed by pro se Plaintiffs[1] with the Court, each against myriad different defendants but all stemming from the same alleged chain of events. That chain of events occurred in the hours and days following the birth of Plaintiff J.A. Smith ("Baby J.A.S.") to Plaintiff Grace Smith and her husband Plaintiff Michael Smith on a late Thursday evening in April 2021 at St. Luke's Hospital in Easton, Pennsylvania. Mr. and Mrs. Smith allege that over the course of the 72 hours following Baby J.A.S.'s birth, they were illegally barred from taking Baby J.A.S. home with them and were subject to illegal visiting restrictions, all due to a faulty drug test result and without constitutionally required due process.

Here, the three Plaintiffs bring several claims against a few of the health providers involved and their private employer. The individual defendants include Drs. Cynthia Schultz, and Patrick Philpot, Nurse Patricia Bates and the private medical practice by which these three individuals are employed, Onsite Neonatal Partners, Inc. ("Onsite"). The claims include

---

[1] Plaintiffs requested to proceed in forma pauperis, which the Court denied. See Order Denying Motion To Proceed IFP, Grace Smith, et al. v. St. Luke's Hospital University Healthcare Network Anderson Campus, et al., No. 5:22-cv-1478-MMB (ECF 6). Plaintiffs have chosen to proceed pro se.

1

violations of procedural due process, violations of the Americans with Disabilities Act, libel, and intentional infliction of emotional distress. Defendants have filed this Motion to Dismiss Plaintiffs' Complaint, on which the Court now rules.

For the reasons state below, the Court will grant Defendants' Motion with prejudice as to Grace and Michael Smith's federal claims, decline pendent jurisdiction as to Grace and Michael Smith's state law claims, and dismiss Baby J.A.S.'s federal and state law claims without prejudice.

## II. FACTS AND PROCEDURAL HISTORY

### A. Facts As Alleged

Sometime on April 8, 2021, Grace Smith gave birth to Baby J.A.S. at St. Luke's, located in Easton Pennsylvania, Northampton County. See Complaint ("Compl.") at 2 (ECF 1). Also on that day, as part of the intake process at the hospital, Mrs. Smith submitted to a urinalysis drug screening ("UDS"), which came back positive for amphetamine or methamphetamine—the test employed by the hospital did not render differentiated results between the two compounds. Compl. at 3.

The next day, Baby J.A.S. was examined by Dr. Santiago (not a defendant in this case). Compl. at 2. During the examination, Dr. Santiago noted on Baby J.A.S.'s medical history that Mrs. Smith had tested "positive for methamphetamines." Compl. at 3. He also noted that Mrs. Smith had a prescription for the medication Vyvanse, a stimulant medication which Mrs. Smith used to treat her Attention Deficit Hyperactivity Disorder ("ADHD").[2] Dr. Santiago determined that Baby J.A.S. was healthy and without any complications. Compl. at 3. However, two other

---

[2] Vyvanse is a stimulant medication used to treat Attention Deficit Hyperactivity Disorder. See "Lisdexamfetamine Dimesylate," MAYO CLINIC, https://www.mayoclinic.org/drugs-supplements/lisdexamfetamine-dimesylate-oral-route/description/drg-20070888 (last viewed 2/2/2023).

doctors examined Baby J.A.S. later that day and determined that a chest x-ray would be necessary and that Baby J.A.S. should be admitted into the neonatal intensive care unit ("NICU").  Compl. at 4-6.  The Smiths told hospital staff that they would like to go home with Baby J.A.S., at which point Dr. Marlino (a defendant in another Smith Case, 22-3786) informed the Smiths that hospital staff had submitted a report to Children Youth Services ("CYS") based on the results of Mrs. Smith's drug test.[3]  Compl. at 7.  When the Smiths insisted that they take Baby J.A.S. home with them, Defendant Dr. Schultz notified local police to have the Smiths removed from the hospital.  Compl. at 7.  Dr. Schultz also notified CYS an additional time her belief that Mrs. Smith "had ingested methamphetamine" based on the Smiths reaction to the news.  Compl. at 7.  When the police arrived, Dr. Schultz and Defendant Dr. Philpot informed them that the Smiths should be removed from the premises and that Mrs. Smith had ingested methamphetamine.  Compl. at 7-8.  The police officers escorted the Smiths out of the building under threat of arrest.  Compl. at 8.

On April 10, Mrs. Smith was informed that she could return to the hospital to visit Baby J.A.S. in the NICU, but that Mr. Smith would not be allowed in the building.  Compl. at 8.  Defendant Nurse Bates introduced herself to Mrs. Smith as the person in charge of the care and treatment of Baby J.A.S.  Compl. at 8-9.  Nurse Bates constantly supervised Mrs. Smith as she cared for and breastfed Baby J.A.S. through the glass walls of the NICU.  Compl. at 8.

On the afternoon of April 12, Baby J.A.S. was permitted by the hospital to go home with the Smiths.  Compl. at 9.

---

[3] Throughout the Complaint and Defendants' Motion, the parties refer to the respective counties' children and youth services agencies as "Children Youth Services," or "CYS."  For continuity with the briefs, the Court will also refer to these entities (which are not named as defendants by the Smiths) as "CYS."

**B. Procedural History**

The procedural history of this case is somewhat convoluted. On April 11, 2022, Grace, Michael and J.A.S. filed a 925-page pro se complaint with the Court asserting various state and federal claims against scores of private and government defendants. See Complaint, Grace Smith, et al. v. St. Luke's Hospital University Healthcare Network Anderson Campus, et al., No. 5:22-cv-1478-MMB, (ECF 2). Grace Smith represents herself to be an attorney barred in Pennsylvania, while Michael Smith represents himself to have graduated from law school but is not a barred attorney.

On June 16, 2022, the Court ordered Plaintiffs to file an amended complaint "that complies with the Federal Rules of Civil Procedure and the Local Rules of this Court" within 30 days. See Order Re Plaintiffs' Complaint, Grace Smith, et al., No. 5:22-cv-1478-MMB, (ECF 21). On June 22, 2022, Plaintiffs filed a 926-page amended complaint. See First Amended Complaint, Grace Smith, et al., No. 5:22-cv-1478-MMB, (ECF 34). Again, the Court ordered Plaintiffs to amend their complaint, this time expressly limiting it to 50 pages. On July 11, 2022, Plaintiffs filed a second amended complaint consisting of a 51-page complaint and an accompanying 45-page brief. See Second Amended Complaint, Grace Smith, et al., No. 5:22-cv-1478-MMB, (ECF 41).

Following a Rule 16 conference held at the courthouse, on July 14, 2022 the Court struck Plaintiffs' second amended complaint for failure to comply with the Federal Rules of Civil Procedure and Local Rules of this Court and ordered Plaintiffs to file "new, separate Complaints" of 50 pages or less. See Order, Grace Smith, et al., No. 5:22-cv-1478-MMB, (ECF 43). Specifically, the Court ordered Plaintiffs to file separate complaints (with separate case numbers) against groups of similar defendants, which would then all be assigned individually to

the Court as related cases.  See July 14, 2022 Rule 16 Hearing Tr. at 20-21, Grace Smith, et al., No. 5:22-cv-1478-MMB, (ECF 48).  Plaintiffs eventually filed five separate complaints in adherence to this Order.

On September 14, 2022, Plaintiffs filed their Complaint.  On November 18, 2022, the Court granted an extension of time for Defendants to file a response.  See Order (ECF 11).  On December 6, 2022, Plaintiffs filed a Motion for Default Judgment (among many similar motions for sanctions across the five cases), which the Court denied.  Defendants filed this Motion to Dismiss on January 20, 2023, and Plaintiffs filed their Response on February 3, 2023.

With the Motion now ripe, the Court will consider Plaintiffs' claims, which include:

Count 1:  Violations of Procedural Due Process,

Count 2:  Violations of the Americans with Disabilities Act,

Count 3, 4 ,5 and 6:  Defamation - Libel,

Count 7:  Intentional Infliction of Emotional Distress.[4]

### III.  JURISDICTION

The Court has subject-matter jurisdiction over Plaintiffs' constitutional and federal claims under 28 U.S.C. § 1311 (federal question jurisdiction) as they address issues of federal law. Because the Court will grant Defendants' Motion to Dismiss for the plaintiff-parents' federal claims, the Court declines pendent jurisdiction as to their state law claims.[5]

---

[4] The Court has issued memorandums of decision for the other four cases filed by the Smiths.  See Smith v. St. Luke's Hospital Univ. Healthcare Network Anderson Campus, No. 22-1478, 2023 WL 1767478 (E.D. Pa. Feb 3, 2023); Smith v. Northampton Cty., No. 22-3788, 2023 WL 1767765 (E.D. Pa. Feb. 3, 2023); Smith v. Marlino, No. 22-3786, 2023 WL 1766271 (E.D. Pa. Feb 3, 2023); Smith v. Bethlehem Twp., No. 22-3785, 2023 WL 1070596 (E.D. Pa. Jan. 27, 2023).

[5] 28 U.S.C. § 1367(c)(3) provides: "The district courts may decline to exercise supplemental jurisdiction over a claim under susbection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."

## IV.  DISCUSSION

### A.  Dismissal for Failure to Comply with Rule 8

First, the Court will address Defendants' argument that the Court should dismiss Plaintiffs' claims for failing to adhere to the pleading requirements prescribed by Rule 8 of the Federal Rules of Civil Procedure, specifically that Plaintiffs' Complaint fails to meet Rule 8's "plain statement" requirement.

Rule 8 provides that a pleading that states a claim for relief must contain "a short plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Defendants argue that Plaintiffs have failed to "clearly identif[y] [a] claim for relief" in their Complaint, and that Plaintiffs' allegations as to Defendants' conduct have no "discernible nexus" to the legal theories underlying their claims for relief. Def. Mot. at 12-14.

A complaint may be dismissed for failing to comply with the pleading requirements of Rule 8. See Garrett v. Wexford Health, 938 F.3d 69, 94-95 (3d Cir. 2019) (finding that district court abused its discretion in ordering dismissal for failure to adhere to Rule 8). Rule 8's "plain statement" requirement "prompts us to ask whether, liberally construed, a pleading 'identifies discrete defendants and the actions taken by these defendants' in regard to the plaintiff's claims." Id. at 93 (citation omitted). "In assessing whether a pleading satisfies Rule 8, there is no bright-line rule to be applied." Id. "The level of factual detail will vary with the complexity of the claims asserted." Id. (citation omitted).

Because the Court is dismissing all of Plaintiffs' claims on other grounds ranging from lack of jurisdiction, ethical obligations and the merits, the Court does not decide whether the Complaint comports with the requirements under Rule 8. While it does not seem clear to the

Court that Plaintiffs' claims are so incomprehensible as to render Defendants incapable of forming a defense, the Court does not need to reach that determination.

### B. Rule 12(b)(6) Standard of Review

In considering a motion to dismiss under FED.R.CIV.P. 12(b)(6), the Court "accept[s] all factual allegations as true [and] construe[s] the complaint in the light most favorable to the plaintiff." Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011) (internal quotations and citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Although a court must accept as true all factual allegations contained in a complaint, this requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555); see also Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (citing Twombly, 550 U.S. at 556 n.3) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests.")). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

### C. <u>Baby J.A.S.'s Claims</u>

Defendants also argue that all claims brought on behalf of Baby J.A.S. must be dismissed for "lack of proper representation," namely that Defendants lack the ability to competently "protect the minor's interests." Def. Mot. at 14.

For purposes of this Motion, the Court will not make a ruling as to the claims brought on behalf of Baby J.A.S., who is included as a claimant for Counts 1, 3, 4 and 7. Instead, the Court instructs the parties to refer to this Memorandum of Decision's accompanying order on how to proceed with Baby J.A.S.'s claims. The Court's decision to proceed in this uncommon fashion is based on an uncommon need given the facts of the case and the method by which it has been litigated by Plaintiffs and is consistent with established precedent. The Court incorporates its reasoning from its other opinions regarding the dismissal of claims brought by the Smiths on behalf of their minor child. See <u>Smith v. St. Luke's Hospital Univ. Healthcare Network Anderson Campus</u>, No. 22-1478, 2023 WL 1767478, at *4-5 (E.D. Pa. Feb 3, 2023); <u>Smith v. Northampton Cty.</u>, No. 22-3788, 2023 WL 1767765, at *4-5 (E.D. Pa. Feb. 3, 2023)

The Court notes the Smiths' comment from their Response that they have attempted to hire counsel many times but have been turned down each time because "[t]hese cases are too labor intensive for the potential financial payoff." Plf. Resp. at 9 n.2. But the Court does not write the rules when it comes to its mandate to protect the interests of minor children that appear before it. Established precedent dictates the rulings of the Court, and that precedent demands that in order to proceed on the claims brought on behalf of Baby J.A.S, independent counsel must be retained for Baby J.A.S. as arranged by the Smiths or a limited guardian ad litem.

Therefore, for the purposes of this Motion, the Court will analyze and rule solely on the claims of the parent-plaintiffs, Mr. and Mrs. Smith.

### D. Count 1: Violations of Procedural Due Process

42 U.S.C. § 1983 serves as a vehicle allowing a plaintiff to bring a cause of action against individual state actors for violating a right protected under the U.S. Constitution.[6]  Here, the Smiths bring one count under § 1983 against several private actor Defendants, alleging violations of the Due Process Clause of the U.S. Constitution's Fourteenth Amendment.  Under § 1983, plaintiffs may bring causes of action against private actors as well, where "the private-party defendant may be appropriately characterized as a 'state actor.'"  See Diamond v. Pa. State Educ. Ass'n., 972 F.3d 262, 269-70 (3d Cir. 2020).

Plaintiffs allege that these violations generally stemmed from the actions undertaken by the individual Defendants that resulted in the Smiths' inability to take their newborn child home with them in the hours and days following its birth and that resulted in Baby J.A.S being restricted from access to the parents during that time, as well as Mrs. Smith and Baby J.A.S. being subjected to round-the-clock supervision.

The Court finds that Defendants' conduct did not constitute a due process violation.  The Court incorporates by reference its reasoning from its other opinion in which it granted dismissal of virtually identical procedural due process claims that the Smiths brought against administrators and staff at St. Luke's.  See Smith v. St. Luke's Hospital Univ. Healthcare Network Anderson Campus, No. 22-1478, 2023 WL 1767478, at *8-10 (E.D. Pa. Feb 3, 2023) ("Balancing these factors, the Court finds that the Smiths have not adequately pleaded facts establishing that they were denied for too long a post-deprivation hearing reviewing the

---

[6] § 1983 states:  "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law. . . ."

9

hospital's decision to take custody of their newborn based on the results of the drug test."). The Court finds that the illegal conduct alleged here is dispositively similar to that from the St. Luke's case, and that the reasoning from the St. Luke's case is sufficient to determine the claim at bar in this case.

Therefore, Count 1 will be dismissed with prejudice.

### E. Count 2: Violations of Americans with Disabilities Act

Mrs. Smith also alleges that St. Luke's is liable for violations of her rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*, which forbids some public businesses from being discriminatory in the way they treat any of their customers based on a customer's medical disability. Mrs. Smith alleges that St. Luke's violated the ADA by denying her, a person diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD"), "equal enjoyment of access to her new born baby as wells as goods, services, facilities, privileges, advantages, and accommodations." Compl. at 21. Mrs. Smith points particularly to the faulty drug test, stating that St. Luke's alleged failure to "differentiate" between illegal methamphetamine and the legal ADHD medicines to which she is prescribed constitutes discrimination based on her ADHD diagnosis.

The Court incorporates by reference its reasoning set out in its St. Luke's opinion, in which the Court granted dismissal of a virtually identical ADA claim made by the Smiths against St. Luke's and its staff. See Smith v. St. Luke's Hospital Univ. Healthcare Network Anderson Campus, No. 22-1478, 2023 WL 1767478, at *11-12 (E.D. Pa. Feb 3, 2023) (ADA claim improperly requested solely monetary damages and was "backward-looking only").

Count 2 will be dismissed with prejudice.

**F. Count 3, 4, 5, 6 and 7: Libel and Intentional Infliction of Emotional Distress**

The Smiths allege four counts of libel and one count of intentional infliction of emotional distress against Defendants.

The Court does not reach the merits of the Smiths' state law claims asserted against Defendants because the Court, in its discretion provided under 28 U.S.C. § 1367, declines to exercise pendent jurisdiction over these claims.  See Carnegie Mellon Univ. v. Cohil, 484 U.S. 343, 350 (1988) ("[W]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.").

**V.    CONCLUSION**

The Court recognizes the obvious, taking Plaintiffs' allegations as true—that Mr. and Mrs. Smith went through a harrowing experience during a time that should have been celebratory and filled with happiness and relief.

However, the Court's duty to apply the law as written is paramount—the Smiths' constitutional claims do not rise to the requisite level of government intrusion and arbitrariness that the higher courts have deemed punishable.  The Smiths are left to find recourse in the state courts, with their elected officials, or among their neighbors and community members to appropriately address the issues they've asserted in this Complaint (and the others they have filed regarding these events).

Drug tests of birth-imminent women rendering false positives for illicit substances are not unheard of, despite their potential for ruining a family's most important moments.  See, e.g., Anne Branigin, *A False Positive on a Drug Test Upended These Mothers' Lives*, WASH. POST. (July 2, 2022), https://www.washingtonpost.com/lifestyle/2022/07/02/false-positive-drug-test-

mothers/; Anne Branigin, *A Hospital Reported Two New Moms for Testing Positive For Drugs— They Had Eaten Poppy Seeds, a Lawsuit Says*, THE LILY (Dec. 22, 2021), https://www.thelily.com/a-hospital-reported-two-new-moms-for-testing-positive-for-drugs-they-had-eaten-poppy-seeds-a-lawsuit-says/; *False Positives Are Common in Drug Tests on New Moms*, L.A. DAILY NEWS (June 29, 2008), https://www.dailynews.com/2008/06/29/false-positives-are-common-in-drug-tests-on-new-moms/ ("Tests for methamphetamine are wrong on average of 26 percent . . . according to studies by the University of Kansas Medical Center.").

Some of the aggrieved, like the Smiths, have taken to the federal courts to pursue claims against the hospitals and government, finding some success in the more egregious cases. See, e.g., Mort v. Lawrence Cty. Children and Youth Servs., No. 2:10-cv-1438, 2011 WL 3862641 (W.D. Pa. Aug. 31, 2011) (denying motion to dismiss due process claim where newborn was held from parents in protective custody for 6 days based solely on false positive drug test result); Bower v. Lawrence Cty. Children and Youth Servs., No. 2:11-cv-0931, 2011 WL 5523712, (W.D. Pa. Nov. 14, 2011) (denying motion to dismiss due process claim where newborn was held for seventy-five (75) days in protective custody based on false positive drug test result); Ferris v. Hershey, No. 1:12-cv-0442, 2012 WL 12893693 (M.D. Pa. Aug. 22, 2012) (denying motion to dismiss due process claim where parents' refusal to consent to hepatitis B shot on religious grounds was sole reason for taking newborn into protective custody); Billups v. Penn State Milton S. Hershey Med. Ctr., 910 F.Supp.2d 745 (M.D. Pa. 2012) (denying motion to dismiss due process claim regarding doctors' lying to parents about treatment of child where protective custody lasted months and which prompted incarceration of and criminal proceedings against parent).

As the Court noted in its analysis, the controversy is clear: there exists a necessary balance between respecting the rights of the family and the need for health providers to instantly provide necessary treatment or safety measures for a newborn suspected of neonatal substance withdrawal and other potential dangers.  See Kia P. v. McIntyre, 235 F.3d 749, 761 (2d Cir. 2000) (holding that "a day or two. . . . [I]ndicates the amount of breathing room that we think the law allows child welfare officials to permit them to determine what action should be taken after parent and child have been separated").[7]  The cited cases above show that some courts have denied Rule 12 motions with facts involving much longer periods of separation.  The Smiths have not cited, and the Court has not found, any decision upholding liability against medical providers in similar situations.  The Smiths may be able to persuade a state court, applying common law or state law, that their claims should be allowed to proceed.

For the reasoning set forth above, the Court will:

- Grant Defendants' Motion with prejudice as to all federal claims asserted by Plaintiffs Grace Smith and Michael Smith.

- Decline pendent jurisdiction as to the Smiths' state law claims.

- Refrain from considering all claims asserted by Baby J.A.S. until the parents elect how they would like to proceed pursuant to the accompanying Order.

- Order the Smiths to either 1) retain a lawyer to represent Baby J.A.S. in this litigation (and themselves, if they like), or 2) petition the appropriate state court to

---

[7] In Kia P., the Second Circuit held that a private hospital and doctor who assumed custody of a newborn for ten days following the mother's faulty positive drug test were state actors because they were "part of the reporting and enforcement machinery" for the state agency "charged with detection and prevention of child abuse and neglect." However, the court ultimately dismissed the plaintiffs' federal constitutional claims on other grounds. Kia P., 235 F.3d at 756.

appoint a guardian for Baby J.A.S. for the limited purpose of representing the interests of Baby J.A.S. related to this litigation.

The Court will give the Smiths thirty (30) days to decide how to proceed.

An accompanying order follows.